**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**CRISS MCELDRIDGE CLAY,**

        **Plaintiff,**

v.

**DAVID HYDRO,**                                   **Case No.  19-3245-DDC-ADM**

        **Defendant.**

## MEMORANDUM AND ORDER

Pro se[1] plaintiff Criss McEldridge Clay brings this civil rights action under 42 U.S.C. § 1983 against defendant David Hydro.  Mr. Clay alleges that defendant violated his Eighth Amendment rights by using excessive force during a 2019 incident.  The alleged violation occurred at Kansas's Lansing Correctional Facility—a prison where defendant worked and where plaintiff was incarcerated.

Four motions are now ripe for decision.

- Defendant's "Motion to Dismiss, or in the Alternative, for Summary Judgment" (Doc. 28)

- The Magistrate Judge's Report and Recommendation (Doc. 52) for plaintiff's Second "Motion of Additions/Amended Complaint" (Doc. 45)

- Plaintiff's "Motion to Add to Memorandum to Opposition of Summary Judg[ ]ment/Dismiss" (Doc. 54)

- Plaintiff's "Motion to add to Plaintiff's Opposition to Summary Judg[ ]ment" (Doc. 55)

---

[1]    Plaintiff proceeds pro se.  *See* Doc. 1-1 at 1.  The court construes his filings liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers.  *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  But the court does not assume the role of advocate for a pro se litigant.  *Hall*, 935 F.2d at 1110.

This Memorandum and Order resolves all four motions. But the court devotes most of its attention to defendant's request for summary judgment (Doc. 28). In that motion, defendant asserts that the qualified immunity doctrine merits summary judgment in his favor. Mr. Clay disagrees. After reviewing the summary judgment record and the parties' arguments, the court concludes that on several key issues, he demonstrates that no genuine dispute exists about any material fact and that he is entitled to judgment as a matter of law under Fed. R. Civ. P. 56. The court grants defendant's motion for summary judgment.

The court now explains its analysis and ruling for each of the pending motions. First up is the Magistrate's Report and Recommendation (Doc. 52) on plaintiff's Second "Motion of Additions/Amended Complaint" (Doc. 45).

## I.      The Magistrate Judge's Report and Recommendation (Doc. 52) on Plaintiff's Second "Motion of Additions/Amended Complaint" (Doc. 45)

Plaintiff filed a second "Motion of Additions/Amended Complaint" (Doc. 45). On July 31, 2020, Magistrate Judge Mitchell issued a corresponding Report and Recommendation (Doc. 52). It recommends that the court deny plaintiff's motion. Doc. 52 at 9. In the Magistrate Judge's view, plaintiff's motion to amend does not satisfy the factors courts consider when determining whether to grant leave to amend a pleading under Fed. R. Civ. P. 15(a)(2) because the new claims plaintiff seeks to add would be futile or unnecessary. *Id.* at 7–9.

Mr. Clay had an opportunity to dispute that conclusion. The Report and Recommendation explained (1) that plaintiff may file a written objection to it within 14 days after plaintiff was served with a copy consistent with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b)(2) and D. Kan. Rule 72.1.4(b), and (2) that if Mr. Clay fails to object within that deadline then "no appellate review of the factual and legal determinations in this report and recommendation will be allowed by any court." *Id.* at 9. The Clerk sent a copy of the Report

and Recommendation to plaintiff by regular mail.  *See* Doc. 52 Docket Entry ("Mailed to pro se party Criss McEldridge Clay by regular mail . . . .").  Plaintiff filed no objection within the 14 days after he was served with a copy of the Report and Recommendation.  And he has not filed any objection as of the date of this Memorandum and Order.

Because plaintiff has filed no objection to the Report and Recommendation within the time prescribed and has sought no extension of time to file an objection, the court now can accept, adopt, and affirm the Report and Recommendation in its entirety.  *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) ("In the absence of timely objection, the district court may review a magistrate's report under any standard it deems appropriate."); *see also Garcia v. City of Albuquerque*, 232 F.3d 760, 766–67 (10th Cir. 2000) (explaining under Fed. R. Civ. P. 72(b) a district court must make a *de novo* determination only for those portions of the report and recommendation to which a party specifically has objected).

The court also happens to agree with Judge Mitchell's conclusion.  After reviewing the Report and Recommendation, the court concludes that plaintiff's motion to amend fails to satisfy Fed. R. Civ. P. 15(a)'s standard for amendment.  The court thus adopts Judge Mitchell's recommendation that the district court deny plaintiff's second "Motion of Additions/Amended Complaint" (Doc. 45).

Next up are defendant's summary judgment motion and a few related motions.

## II.   Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. 28)

Defendant filed a motion asking the court to dismiss plaintiff's claims or grant defendant summary judgment.  Doc. 28 at 1.  Defendant also filed a corresponding Memorandum in Support (Doc. 29).  Mr. Clay filed a Response (Doc. 49).  And he followed up with two requests

to augment his Response.  *See* Doc. 54; Doc. 55.  The court now considers those two requests to supplement the Response before addressing the larger summary judgment questions.

### A.  Plaintiff's Motions to Supplement His Response (Doc. 54; Doc. 55)

Mr. Clay filed a Response (Doc. 49) to defendant's motion for summary judgment.  The Response explained that Mr. Clay had not yet been able to view the video evidence as of July 17, 2020.  Doc. 49 at 7.  He forecasted that he "may want to add" to his Response after he watched the videos.  *Id.*  He subsequently filed a "Motion to View Video" (Doc. 50).  And after viewing the video evidence, Mr. Clay filed a motion to supplement his Response.  Doc. 54 at 1.  The court grants that motion (Doc. 54) and considers it when ruling on defendant's summary judgment motion (Doc. 28).

Mr. Clay filed a second motion purportedly seeking to augment his Response.  He styles this motion as a "Motion to add to Plaintiff's Opposition to Summary Judg[ ]ment" (Doc. 55). The filing explains that plaintiff "would like to point to" case law.  Doc. 55 at 1.  And his filing does just that.  *See id.* at 1–3.  Given Mr. Clay's pro se status and defendant's failure to contest or respond to the motion, the court liberally construes Mr. Clay's pro se filing as a Notice of Supplemental Authority under D. Kan. Rule 7.1(f).  The court considers it when ruling on defendant's motion.[2]

Before commencing the summary judgment analysis, the court defines the scope of the relevant factual universe.

---

[2]     The court notes that plaintiff filed Doc. 54 and Doc. 55 before defendant filed his Reply (Doc. 59).  And D. Kan. Rule 7.1(f) allows a party to respond to a Notice of Supplemental Authority. Defendant thus had notice of Mr. Clay's full responsive arguments before the filing his Reply and had a separate means to respond to Doc. 55.

### B.  Summary Judgment Facts

Defendant sets forth facts supporting his motion for summary judgment.  *See* Doc. 29 at

2–4.  Plaintiff agrees with most of defendant's facts and explicitly notes the few exceptions to his

agreement.  *See* Doc. 49 at 2.

At all relevant times, Mr. Clay was incarcerated at the Lansing Correctional Facility in

Lansing, Kansas.  Doc. 29-1 at 2–3.  And defendant was, at all relevant times, employed there as

a Corrections Officer II.  Doc. 29-2 at 2 (Hydro Decl. ¶ 2).

On October 9, 2019, defendant "attempted to locate Clay and found him at the stairs to

the re-entry building."  Doc. 29 at 3 (¶ 4) (first citing Doc. 29-2 at 2 (Hydro Decl. ¶ 4); then

citing Doc. 31 at 4; then citing Doc. 37 (Video Two at 1:01:49; Video Three at 1:01:27)).

Defendant "told Clay to 'return to [his] unit' but Clay told [defendant] he 'was told by [his] OIC

to come [to re-entry].'"  *Id.* (¶ 5) (quoting Doc. 1 at 3 (Compl.)).  Mr. Clay "then 'turned and

started up the stairs.'"  *Id.* (¶ 6) (first quoting Doc. 1 at 3 (Compl.); then citing Doc. 37 (Video

Three at 1:01:43)).  Defendant "placed Clay in restraints."  *Id.* (¶ 7) (first citing Doc. 29-2 at 2

(Hydro Decl. ¶ 5); then citing Doc. 31 at 4; then citing Doc. 37 (Videos Two and Three at

1:01:56)).

A few seconds later, Mr. Clay was on the ground.  The parties dispute how he got there.[3]

---

[3]  Mr. Clay alleges that defendant threw, pushed, spun, or shoved him to the ground.  *See* 49 at 5;
Doc. 49-1 at 1; Doc. 49-1 at 4 (Clay Decl. ¶ 8); Doc. 54 at 2.  Defendant asserts that Mr. Clay threw
himself on the ground.  Doc. 29 at 3 (¶ 8) (first citing Doc. 29-2 at 2 (Hydro Decl. ¶ 5); then citing Doc.
31 at 4; then citing Doc. 37 (Videos Two and Three at 1:02:11)).  Several video cameras recorded Mr.
Clay's descent.  *See* Doc. 37 (Videos Two and Three at 1:02:09).

When "opposing parties tell two different stories, one of which is blatantly contradicted by the
record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for
purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  Here,
the unchallenged videos show Mr. Clay walk his legs out in front of him, fall to the ground leftward, and
then lay down onto his right side.  *See* Doc. 37 (Videos Two and Three at 1:02:09).  Before the descent,
defendant slowly steps left but makes no sudden movement before Mr. Clay's more than 200 pounds of
mass fall toward the ground.  *Id.*  Defendant then reacts.  *Id.*  The footage of the fall reveals no throw,

Video recordings show Mr. Clay move his own legs out in front of him, fall or slide leftward to the ground, and then lay on his right side.  Doc. 37 (Videos Two and Three at 1:02:09).  Once laying on the ground, Mr. Clay refused to stand or walk on his own.  Doc. 29 at 3 (¶ 9) (first citing Doc. 29-2 at 2 (Hydro Decl. ¶ 5); then citing Doc. 31 at 4; then citing Doc. 37 (Videos Two and Three at 1:02:11; Video Four, at 1:01:39; Video Five at 1:02:03; Video Six at 1:02:12; Video Seven at 1:02:47)).[4]  Because Mr. Clay "would not stand or walk on his own" once lifted from the ground, "three officers assisted [defendant] in carrying Clay back to his cell."  *Id.*

"In the medical examination immediately after the incident, Clay reported pain to both of his wrists and his left temple" and he "denied other injuries."  *Id.* at 4 (¶ 11) (citing Doc. 31 at 12–14).  Mr. Clay's "medical records reveal the nurse noted a dime-sized abrasion to his left temple that was barely visible and possibly some slight swelling to his left wrist, but no anatomical deformities were visible."  *Id.* (¶ 12) (citing Doc. 31 at 14).  "Photos taken after the

---

push, spin, or shove.  After viewing the video evidence, the court concludes that no reasonable juror could believe Mr. Clay's allegations about his path to the pavement.  The record blatantly contradicts those allegations.  The court thus declines to rely on a "visible fiction" by adopting Mr. Clay's version of the facts about his fall to the ground for the purposes of ruling on defendant's summary judgment motion.  *See Scott*, 550 U.S. at 380–81.  Instead, the court will view the facts about Mr. Clay's fall in the light depicted by the videos.  *Id.*

[4]     Mr. Clay clarifies that "he informed [defendant] he would walk to segregation C-1, Tru unit, or B-1[.]"  Doc. 49 at 2.  Mr. Clay explains that he is "always willing to go to [segregation] during refusals to lockdown[.]"  Doc. 49 at 3–4.  The court construes Mr. Clay's clarification as asserting that he was unwilling to stand up from the ground unless defendant would allow Mr. Clay to go to a segregation unit.  *Id.*; *see also* Doc. 49 at 5 (explaining that plaintiff "was willing to walk peacefully to one of the three segregation units"); Doc. 6 at 2 (Clay Aff.) (attesting that while Mr. Clay was on the ground, defendant asked Mr. Clay whether he was "'going to walk'" and Mr. Clay replied that he "would walk to segregation"); Doc. 29-3 at 16 (explaining that as corrections officers were carrying plaintiff, he told "them again [he] would walk to segregation").

        Defendant asserts that Mr. Clay's clarification—that he would stand up if permitted to walk to a place of his own choosing—fails to controvert the fact defendant stated.  Doc. 59 at 2–3.  Defendant reasons that it "remains uncontroverted that Clay would not stand or walk on his own and was carried to his cell" because the "fact that Clay was willing to walk to segregation, which is not where [defendant] gave him a direct order to go, is immaterial."  *Id.*  The court agrees with defendant's reasoning.

incident show indentations from the restraints but no injury to Clay's wrist or face." *Id.* at 3 (¶ 10) (citing Doc. 31 at 15–24). "An X-ray taken on October 23, 2019 showed no abnormality to Clay's left wrist." *Id.* at 4 (¶ 13) (citing Doc. 32 at 15). Based on his conduct during the October 9, 2019 incident, Mr. Clay was found guilty of disobeying orders. *Id.* (¶ 14) (citing Doc. 29-3 at 4–9).

## C. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that "no genuine dispute" exists about "any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the court applies this standard, it views the evidence and draws inferences in the light most favorable to the non-moving party. *Scott*, 550 U.S. at 378. An issue of "material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on the issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And, an issue of fact is "material" if it has the ability to "affect the outcome of the suit under the governing law[.]" *Id.*

The party moving for summary judgment bears the initial burden of showing "the basis for its motion." *Celotex Corp.*, 477 U.S. at 323; *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (explaining that the moving party bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law'" (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)). A summary judgment movant can satisfy this burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325; *see also Kannady*, 590 F.3d at 1169 (explaining that, to meet its summary judgment burden, the moving party "need not negate the non-movant's claim, but need only point to an

absence of evidence to support the non-movant's claim" (citation and internal quotation marks omitted)).

If the moving party satisfies its initial burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (citation and internal quotation marks omitted); *see also Kannady*, 590 F.3d at 1169 ("If the movant carries [the] initial burden, the nonmovant may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof." (citation and internal quotation marks omitted)).  To satisfy this requirement, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (citation and internal quotation marks omitted).  When deciding whether the parties have shouldered their summary judgment burdens, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

Summary judgment is not a "disfavored procedural shortcut." *Celotex Corp.*, 477 U.S. at 327.  Instead, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

### D.  Whether Mr. Clay Brings Claims Against Defendant in His Official Capacity

Defendant argues that state sovereign immunity under the Eleventh Amendment bars plaintiff's claims against him in his official capacity.  Plaintiff does not dispute that assertion.  Instead, he clarifies that he brings claims against defendant in his *individual* capacity and not in his official capacity.  Doc. 49 at 4 (¶ 1) (clarifying that defendant "is not being sued in his

official capacity."); *see also* Doc. 49 at 2 (¶ 6) ("[P]laintiff has declared that it is in his individual capacity."); Doc. 49-1 at 2 ("I bring this suit to the courts against [defendant] in his individual capacity . . . .").  Mr. Clay's repeated clarifications should dispel any confusion.  But to the extent the Complaint brings claims against defendant in his official capacity, the court understands Mr. Clay to have waived them or conceded that defendant is entitled to summary judgment against those claims.  So the court now will focus on the claims against defendant in his individual capacity.

### E. Whether Qualified Immunity Requires Summary Judgment for Defendant on Mr. Clay's Individual Capacity Claims

#### 1. Qualified Immunity Standard

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Id.*  "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'"  *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004)).

To establish a claim under 42 U.S.C. § 1983 against an individual defendant who asserts the defense of qualified immunity, plaintiff must (1) come forward with facts that "make out a violation of a constitutional right[,]" and (2) demonstrate that "the right at issue was 'clearly established' at the time of defendant's alleged misconduct."  *Id.* at 232 (citing *Saucier v. Katz*,

533 U.S. 194, 201 (2001)).  A court has discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.* at 236.  Addressing the clearly established question first "may avoid the risk of deciding a case incorrectly given insufficient briefing on the constitutional violation question."  *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010) (citing *Pearson*, 555 U.S. at 239).

A right is clearly established when "'there [is] a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts . . . found the law to be as the plaintiff maintains.'"  *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (quoting *Stearns v. Clarkson*, 615 F.3d 1278, 1282 (10th Cir. 2010)).  But the "plaintiff cannot simply identify a clearly established right in the abstract and allege that the defendant has violated it."  *Herring v. Keenan*, 218 F.3d 1171, 1176 (10th Cir. 2000) (citation and internal quotation marks omitted).  Instead, the court must determine "'whether the violative nature of *particular* conduct is clearly established.'"  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)).

Conversely, to hold a defendant liable under § 1983, it is not necessary that "'the very action in question has previously been held unlawful.'"  *Id.* at 1866–67 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  Thus, for qualified immunity to apply, the Supreme Court does not require a "reported case directly on point."  *Id.* at 1867 (citation and internal quotation marks omitted).  Instead, the Supreme Court's case law requires district courts to evaluate whether "the unlawfulness of the officer's conduct '[is] apparent'" "'in the light of pre-existing law.'"  *Id.* (quoting *Anderson*, 483 U.S. at 640).  This governing standard "'gives government officials breathing room to make reasonable but mistaken judgments about open legal

questions.'"  *Lane v. Franks*, 573 U.S. 228, 243 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).  In short, the doctrine of qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Ziglar*, 137 S. Ct. at 1867 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

### 2.  Analysis

To establish his § 1983 claim against defendant who invokes the defense of qualified immunity, Mr. Clay must (1) come forward with facts that "make out a violation of a constitutional right," and (2) demonstrate that "the right at issue was 'clearly established' at the time of defendant's alleged misconduct."  *Pearson*, 555 U.S. at 232 (citing *Saucier*, 533 U.S. at 201).  A court has discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.* at 236.

The court next considers these two prongs.  First, the court analyzes whether Mr. Clay has come forward with facts that make out a violation of a constitutional right—here that alleged right derives from the Eighth Amendment.

### 1. Whether Mr. Clay Has Come Forward with Facts that Make Out a Violation of a Constitutional Right

Mr. Clay alleges that defendant violated his Eighth Amendment rights by using excessive force during their incident in autumn 2019.  *See* Doc. 49 at 4, 7.  The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  An Eighth Amendment excessive force claim consists of two parts:  (1) an objective standard that asks "if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation," and (2) a subjective test requiring plaintiff to show that prison officials acted with a "sufficiently culpable state of mind."  *Redmond v.*

*Crowther*, 882 F.3d 927, 936 (10th Cir. 2018) (quoting *Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1289 (10th Cir. 1999)).  "The core inquiry for an Eighth Amendment excessive force claim is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Ali v. Duboise*, 763 F. App'x 645, 650 (10th Cir. 2019) (citation omitted).

### 2. Whether Mr. Clay Has Come Forward with Facts Showing that He Sustained a Violation of his Eighth Amendment Rights when Mr. Clay Fell to the Ground

Mr. Clay alleges that defendant handcuffed him and then threw, pushed, or shoved him to the ground.  *See* Doc. 49-1 at 1; Doc. 49-1 at 4 (Clay Decl. ¶ 8).  As the court discussed at length above, the video record blatantly contradicts Mr. Clay's claims of force about his fall to the ground.  Mr. Clay has not come forward with facts showing that he sustained a violation of his Eighth Amendment rights when he traveled from his feet to the floor.  The court grants summary judgment for defendant against plaintiff's claim that defendant infringed on Mr. Clay's Eighth Amendment rights by using excessive force in bringing Mr. Clay to the ground.

### 3. Whether Mr. Clay Has Come Forward with Facts Showing that He Sustained a Violation of his Eighth Amendment Rights when Defendant Spat on Him

Mr. Clay alleges that defendant spat on his head while he was on the ground.  Doc. 49 at 7; Doc. 6 at 1–2.  Defendant attests that he did no such thing.  Doc. 29-2 at 3 (Hydro Decl. ¶ 6). The court resolves this disputed fact in plaintiff's favor as the non-movant.  Defendant asserts that "to the extent Clay intends to bring an excessive force claim based on the alleged spitting incident, that claim also must fail."  Doc. 29 at 14.  Defendant cites a case holding that "a one-time incident of spitting, while certainly deplorable, does not rise to the level of a constitutional violation."  *Zavala v. Barnik*, 545 F. Supp. 2d 1051, 1059 (C.D. Cal. 2008), *aff'd sub nom.*

*Zavala v. Bartnik*, 348 F. App'x 211 (9th Cir. 2009).  Many federal courts have reached similar conclusions about spitting.[5]  Mr. Clay cites no cases that suggest otherwise.

Spitting on others is no way to win friends and influence people.  It's disgusting.  But, in this circumstance, that alleged conduct falls short of the objective harm required to violate the Eighth Amendment.  So, Mr. Clay's claim based on the force of spitting fails to adduce facts that can support a violation of a constitutional right—a necessary step to overcome qualified immunity.  *See Pearson*, 555 U.S. at 232.  The doctrine of qualified immunity thus shields defendant from Mr. Clay's § 1983 claim based on spitting.  The court grants summary judgment for defendant on that claim.

### 4. Whether Mr. Clay Has Come Forward with Facts Showing that He Sustained a Violation of his Eighth Amendment Rights when Defendant Bent His Wrist

Mr. Clay asserts that defendant violated his Eighth Amendment rights by using excessive force when he "proceeded to grab [Mr. Clay's] left wrist pu[l]ling it backwards attempting to

---

[5]      *See, e.g.*, *Gill v. Tuttle*, 93 F. App'x 301, 303 (2d Cir. 2004) (affirming district court's grant of summary judgment for defendant-corrections officer against the Eighth Amendment aspect of plaintiff's claim and holding that the officer spitting on plaintiff did not constitute an unnecessary and wanton infliction of pain, and as such did not rise above a *de minimis* use of force); *DeMallory v. Cullen*, 855 F.2d 442, 444 (7th Cir. 1988) (agreeing with district court's conclusion that a correctional officer spitting on a prisoner does not rise to the level of a constitutional violation); *McFarland v. Fuller*, No. 4:20-CV-00011-JRG-CHS, 2020 WL 2161326, at *4 (E.D. Tenn. May 5, 2020) (concluding that "spitting does not cause a physical injury that is more than *de minimis*" and dismissing plaintiff's allegations for failing to state a § 1983 claim); *Barnes v. Daviess Cnty. Det. Ctr.*, No. 4:18-CV-P91-JHM, 2018 WL 4997054, at *3 (W.D. Ky. Oct. 15, 2018) ("Being spat upon is not itself a constitutional violation . . . ."); *Smith v. Marshall*, No. CV 07-0864-JHN PJW, 2011 WL 2563289, at *3 (C.D. Cal. May 10, 2011), *report and recommendation adopted*, No. CV 07-864-JHN PJW, 2011 WL 2563327 (C.D. Cal. June 29, 2011) (concluding that "spitting in a prisoner's face" does not does not rise to the level of a constitutional deprivation); *McCullough v. Miller*, No. CIV.A. 06-514, 2008 WL 4361254, at *7 (W.D. Pa. Sept. 24, 2008), *aff'd*, 330 F. App'x 330 (3d Cir. 2009) ("If, as we conclude, no reasonable juror could find the use of the physical force by the three defendants was excessive, then the alleged spitting by one of these three . . . cannot cause such non-excessive physical force to transform into excessive force in violation of the Constitution or otherwise violate the Eighth Amendment."); *Greene v. Mazzuca*, 485 F. Supp. 2d 447, 451 (S.D.N.Y. 2007) (concluding that plaintiff's allegations that he was spit at does not "rise to the level at which prevailing doctrine sets the constitutional bar to establish cruel and usual punishment in this regard").

break it" while Mr. Clay was laying on the ground.  Doc. 49-1 at 4 (Clay Aff. ¶ 9); *see also* Doc. 49-1 at 1.  Defendant fails to address the wrist bending claim directly.  *See generally* Doc. 29 at 11–13; *see* Doc. 29 at 11–12 (asserting generally that "the force alleged is *de minimis*" (citing *Snyder v. Spilde*, No. 15-cv-2169-GPG, 2016 WL 1059612, at *3–4 (D. Colo. Mar. 17, 2016) (further citations omitted))).  In asserting that he generally acted in an objectively reasonable manner during the incident, defendant claims that "[n]othing in the video shows cruel or inhumane punishment or unnecessary force."  Doc. 29 at 11–12.  The court agrees, but that doesn't end the matter.  Indeed, the video footage fails to confirm Mr. Clay's excessive force allegations about his wrist, but it doesn't rule them out either.  Given the distance, angles, and image quality, the videos do not reveal whether defendant might have exerted force on Mr. Clay's handcuffed wrist while the inmate was on the ground.

Defendant also argues that Mr. Clay's claims fail because he cannot meet an excessive force claim's subjective component.  Defendant asserts that plaintiff has marshaled no evidence that he acted maliciously or sadistically for the purpose of causing harm.  Doc. 29 at 13.  But he fails to acknowledge Mr. Clay's allegations (1) that he and defendant had bad blood before October 9, 2019 and (2) that defendant had informed Mr. Clay that he looked forward to an opportunity to discipline Mr. Clay.  *See* Doc. 49-1 at 1 (alleging that defendant "has told [Inmate] Clay on multiple occasions that he cannot wait to spray him or get the chance to carry him to his cell").

This controversy presents a thorny question.  But the court need not resolve it because, regardless of the answer, the court ultimately concludes that the qualified immunity doctrine requires summary judgment for defendant against Mr. Clay's wrist bending claim under § 1983.  For reasons the court explains at length below, Mr. Clay fails to satisfy the second prong of the

qualified immunity analysis. The court thus need not and does not resolve Mr. Clay's wrist-bending excessive force claim under the first prong of qualified immunity analysis and, instead, will do so below when analyzing the second prong.

### 5. Whether Mr. Clay Has Come Forward with Facts Showing that He Sustained a Violation of his Eighth Amendment Rights when Defendant Transported Mr. Clay Back to His Cell

Defendant seeks summary judgment against Mr. Clay's § 1983 claim based on defendant's use of force in transporting Mr. Clay back to his cell. Doc. 29 at 11–13. He asserts Mr. Clay's claims of excessive force for carrying him back to his cell fail both the objective and subjective components of an excessive force claim. The court considers the objective inquiry first.

Defendant asserts that Mr. Clay fails to show that the force used to transport him back to his cell was "objectively serious." Doc. 29 at 10. Mr. Clay, according to his own allegations, refused to walk unless permitted to go to his preferred destination. Doc. 49 at 3–5; Doc. 6 at 2 (Clay Aff.) (attesting that while Mr. Clay was on the ground, defendant asked Mr. Clay whether he was "'going to walk'" and Mr. Clay replied that he "would walk to segregation"); Doc. 29-3 at 16. So, several officers lifted Mr. Clay from the pavement where he lay and carried him away. Doc. 37 (Videos Two and Three at 1:02:11; Video Four, at 1:01:39; Video Five at 1:02:07; Video Six at 1:02:12; Video Seven at 1:02:47). Citing Mr. Clay's medical records and the Use of Force Report which show no serious injury, defendant reasons that the evidence shows that he used no more than *de minimis* force when he carried Mr. Clay back to his cell. Doc. 29 at 11.

The court agrees. The court can imagine that carrying a man who is well over 200 pounds and refuses to walk on his own may not produce the smoothest ride. But given the video footage, Mr. Clay's own allegations, exhibits, and medical records, the court concludes that Mr.

Clay presents no triable issue whether the force allegedly used against Mr. Clay in carrying him back to his cell was excessive. To the contrary, the undisputed facts establish that the force used was *de minimis* and not of a repugnant nature. In sum, Mr. Clay fails to come forward with facts showing that he sustained a violation of his Eighth Amendment rights when defendant helped transport Mr. Clay back to his cell. The court thus grants summary judgment for defendant on this aspect of Mr. Clay's § 1983 claim.

### 6. Whether Mr. Clay Has Come Forward with Facts Showing that He Sustained a Violation of his Eighth Amendment Rights when Defendant Placed Mr. Clay Inside His Cell

Mr. Clay alleges that defendant slid Mr. Clay "into the door frame and kicked" him within his cell. Doc. 49-1 at 4 (Clay Decl. ¶ 13). Defendant attests that he did not kick Mr. Clay. Doc. 29-2 at 3 (Hydro Decl. ¶ 6). But for the purposes of this summary judgment analysis—where Mr. Clay is the non-movant—the court takes Mr. Clay's word for it.

Defendant seeks summary judgment on Mr. Clay's § 1983 claim based on defendant's use of force in placing Mr. Clay inside his cell. Doc. 29 at 13–15. Defendant notes that Mr. Clay failed to respond to the motion's argument that the force used in that setting was *de minimis*. Doc. 59 at 6. Defendant asserts that "[n]ot only do [defendant's] arguments have substantive merit, requiring the Court to grant summary judgment on that basis, summary judgment also should . . . be granted because Clay wholly failed to address the argument that the force used in placing Clay inside his cell was not unlawful." *Id.* (first citing Fed. R. Civ. P. 56; then citing *Llamas v. QC Fin. Servs., Inc.*, No. 13-2053-JTM, 2014 WL 707231, at *19 (D. Kan. Feb. 24, 2014), *aff'd*, 621 F. App'x 906 (10th Cir. 2015); then citing *Brown v. West*, 856 F. Supp. 591, 594 n.3 (D. Kan. 1994)).

The court agrees.  Mr. Clay's response neglects to address defendant's arguments directly.  Moreover, no reasonable jury could find that the alleged force was objectively harmful enough to establish a constitutional violation.

The Supreme Court has explained that "not every malevolent touch by a prison guard gives rise to a federal cause of action."  *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (citation and internal quotation marks omitted).  And an "inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim."  *Id.* at 38 (citations and internal quotation marks omitted).  While a kick is not a push or a shove, and the absence of injury is not dispositive, *see id.*, the undisputed facts here present no triable issue whether the kick alleged here in underwhelming detail is a *de minimis* use of physical force.  The alleged kick or bump into the doorframe—delivered while returning a non-compliant inmate refusing to walk to his cell—apparently caused no injury, serious or otherwise.  The alleged conduct was neither sadistic nor "of a sort repugnant to the conscience of mankind."  *Id.*  Our Circuit has noted that courts have held that force even more substantial than what plaintiff alleges here did not violate the Eighth Amendment.  *See Norton v. The City of Marietta, Okla.*, 432 F.3d 1145, 1156 (10th Cir. 2005) (affirming district court's grant of summary judgment to defendants for alleged excessive force violation where officers hurt plaintiff by grabbing and twisting his neck because the Tenth Circuit failed "to see how these defendants' actions were objectively harmful enough to establish a constitutional violation"); *see also Marshall v. Milyard*, 415 F. App'x 850, 853 (10th Cir. 2011) (citing cases from across the federal Circuits).

Even if Mr. Clay had not failed to respond to defendant's argument that the force used in and around Mr. Clay's cell was *de minimis*, Mr. Clay has failed to come forward with facts

presenting a genuine issue whether he sustained a violation of his Eighth Amendment rights when defendant placed and secured Mr. Clay inside his cell.

Mr. Clay thus fails to satisfy the first prong of the qualified immunity analysis for every aspect of his encounter with defendant other than the alleged wrist bending.  But Mr. Clay ultimately fails to overcome defendant's qualified immunity defense on that alleged Eighth Amendment violation too.  The court now turns to the second prong of the qualified immunity analysis and explains why it thwarts Mr. Clay's § 1983 claims.

### F.  Whether Mr. Clay Demonstrates that a Constitutional Right at Issue was Clearly Established When Defendant's Alleged Misconduct Occurred

Defendant argues that, even if the summary judgment facts present a triable issue whether he violated Mr. Clay's constitutional right against excessive force, defendant is entitled to summary judgment against the § 1983 excessive force claim for an independent reason:  the second prong of the qualified immunity analysis bars the claim.  Doc. 29 at 15–16.  He argues that the constitutional rights that Mr. Clay asserts were violated were not clearly established when Mr. Clay and defendant interacted on October 9, 2019.  *Id.* at 15.  Defendant contends that no United States Supreme Court or Tenth Circuit decision establishes that his uses of force against Mr. Clay under the circumstances presented was unconstitutional.  *Id.* at 15–16.  He asserts that qualified immunity thus bars plaintiff's § 1983 claim against him.

Mr. Clay disagrees.  He implies that his § 1983 claim satisfies the second prong of the qualified immunity analysis because "any normal person knows that when a person is already restrained and following commands, [a]ny use of force thereafter is an attack upon them or in this case a violation of the [E]ighth Amendment."  Doc. 49 at 7.  Mr. Clay also cites many cases to support his argument.  *See* Doc. 49 at 3, 5–6; Doc. 55 at 1–3.

Before fully evaluating the parties' arguments, the court first recites guidance from the Supreme Court and the Tenth Circuit about how to analyze the second prong of a qualified immunity defense.

### 1. "Clearly Established Right" for Purposes of Qualified Immunity

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix*, 577 U.S. at 11 (citations and internal quotation marks omitted). The Supreme Court has instructed courts not to define the right at issue "'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Ashcroft*, 563 U.S. at 742). Instead, "the clearly established law must be 'particularized' to the facts of the case." *Id.* (quoting *Anderson*, 483 U.S. at 640); *see also Mullenix*, 577 U.S. at 12 ("This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." (citation and internal quotation marks omitted)).

This standard does not "'require a case directly on point' for a right to be clearly established[.]" *White*, 137 S. Ct. at 551 (quoting *Mullenix*, 577 U.S. at 12). Instead, to find that a statutory or constitutional right is "clearly established," some "'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *Mullenix*, 577 U.S. at 12). The precedent clearly establishing a constitutional right must come from "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Reavis ex rel. Coale v. Frost*, 967 F.3d 978, 992 (10th Cir. 2020) (citation and internal quotation marks omitted).

### 2. Analysis

Mr. Clay cites many cases to support his argument that defendant violated his Eighth Amendment rights and that the rights were clearly established for purposes of the qualified

immunity analysis.  The court has considered each of these cases to determine whether they support Mr. Clay's arguments against qualified immunity.  They do not.

Mr. Clay struggles to overcome that video evidence blatantly contradicts key details of the facts he offers.  The disconnect between Mr. Clay's allegations and the video-informed record infects his legal analysis.  Mr. Clay cites many cases involving law enforcement officers tackling, striking, or otherwise harming an inmate who was restrained or compliant.  But those cases are hardly relevant here where Mr. Clay's own allegations explain and multiple videos show that Mr. Clay fell to the ground, laid down, refused to stand up, refused to walk once lifted back up to his feet, and then had to be carried back to his cell by multiple corrections officers.  As the analysis below explains more fully, this incident is vastly different from the facts of cases that Mr. Clay cites.  The case law Mr. Clay offers struggles to show that the clearly established weight of authority has found the law to be as Mr. Clay maintains.  But even if it did, that authority wouldn't apply to the facts of this case.

This defect dooms his more general argument too.  Mr. Clay implies that he meets the second prong of the qualified immunity analysis because "any normal person knows that when a person is already restrained and following commands, [a]ny use of force thereafter is an attack upon them or in this case a violation of the [E]ighth Amendment."  Doc. 49 at 7; *see also* Doc. 49 at 6.  Not only does Mr. Clay misstate the law in an overinclusive manner, but his legal analysis and application of that stated rule assumes facts that his own allegations contradict.  Most substantially, Mr. Clay acknowledges that he was not following commands when the incident occurred.  *See* Doc. 49 at 5 ("Plaintiff would agree saying I'm not going back to the cell house is refusing an order . . . .").

Ultimately, Mr. Clay fails to demonstrate that a constitutional right actually at issue was clearly established when defendant's alleged misconduct occurred.  The court now bolsters this conclusion by explaining why Mr. Clay's discussion of many supposedly analogous or controlling cases falls short again and again.

Mr. Clay invokes *Felix v. McCarthy*, 939 F.2d 699 (9th Cir. 1991) for its holding that throwing a prisoner against a wall without reason violated the Eighth Amendment.  Doc. 49 at 3. In *Felix*, the Ninth Circuit affirmed the district court's denial of summary judgment based on qualified immunity.  *Felix*, 939 F.2d at 702.  The lawsuit involved "an unprovoked and unjustified attack by a prison guard[.]"  *Id.  Felix* emphasized that plaintiff's interaction with the prison guards did *not* show that the prisoner was "violating prison rules or the guards were acting on a reasonable but mistaken belief that the prisoner posed a security threat."  Those facts differ from what happened here at Lansing Correctional Facility on October 9, 2019.  Mr. Clay acknowledges that his conduct violated prison rules.  *See* Doc. 49 at 5 ("Plaintiff would agree saying I'm not going back to the cell house is refusing an order . . . .").  The court cannot describe defendant's alleged uses of force as "an unprovoked and unjustified attack" on Mr. Clay.  *Felix* hardly covers the facts here, a conclusion that soon will become a familiar one.

Mr. Clay also cites *Winder v. Leak*, 790 F. Supp. 1403 (N.D. Ill. 1992) for its holding that pushing a disabled inmate and causing him to fall violated the Eighth Amendment.  Doc. 49 at 3. *Winder* held that a corrections officer's "exertion of force against a handicapped individual, knocking that person to the floor and causing pain, is not *de minimis* for Eighth Amendment purposes."  *Winder*, 790 F. Supp. at 1407.  Mr. Clay does not allege that he was disabled.  And for reasons discussed above, the governing facts do not show that defendant knocked Mr. Clay to the floor.  *Winder* does not suggest that defendant's alleged conduct here was unconstitutional.

Mr. Clay next cites *Wilson v. Lambert*, 789 F.2d 656 (8th Cir. 1986) for its holding that alleging the beating of an inmate who would not return to his unit because of threats of sexual assault by fellow inmates stated an Eighth Amendment claim.  Doc. 49 at 3.  In *Wilson*, the Eighth Circuit affirmed the judgment of the district court because the district court's findings of fact were not clearly erroneous.  *Wilson* bears some noteworthy similarities to Mr. Clay's case. It involves use of force and transport of an inmate who refused to return to his barracks.  *Wilson*, 789 F.2d at 657.  But the cases' factual similarities end there.  In *Wilson*, the corrections officers struck the plaintiff-inmate in the face multiple times, kicked him while on the ground, dragged his body by the feet into another hallway, and once there, struck the inmate in the face several times more.  *Id.*  As "a result of the beating he suffered a bloody nose, a painful neck injury, and two cracked front teeth."  *Id.*  Here, defendant used force when helping carry and secure Mr. Clay back to his cell after Mr. Clay refused to follow instructions, stand, or walk to his cell.  He was not struck in the face repeatedly.  He was not dragged by the feet.  He did not sustain serious physical trauma.  These factual differences render *Wilson* too distant to support Mr. Clay's claim that defendant violated clearly established law.

Mr. Clay cites *Lewis v. Downs*, 774 F.2d 711 (6th Cir. 1985) for the purported rule that "even if the officer did not act maliciously or sadistically," a court may find that the officer "still acted vicious[s]ness going beyond a good faith effort to maintain or restore discipline[.]"  Doc. 49 at 5 (citing *Lewis*, 774 F.2d 711).  Mr. Clay explains that *Lewis* held that "evidence that an officer kicked a handcuffed person who was lying on the ground showed malicious motivation." *Id.* at 5–6.  *Lewis* held that "[s]triking the head with a nightstick and kicking the groin of a restrained man is plainly excessive" and that such a conclusion was "particularly true" where the 120-pound victim was "physically inadequate."  *Lewis*, 774 F.2d at 714.

But *Lewis* provides little support to Mr. Clay.  For starters, it's a Sixth Circuit case about conduct that violated plaintiff's due process rights—not his Eighth Amendment rights.  And the Sixth Circuit later "eschewed a substantive due process approach to excessive force claims in favor of a fourth amendment analysis . . . ."  *Lewis v. City of Irvine, Ky.*, 899 F.2d 451, 456 (6th Cir. 1990) (citation omitted).  Moreover, Mr. Clay does not allege that he received a nightstick to the head or a kick to the groin.  While he asserts that he endured excessive force while handcuffed, the difference between the conduct in *Lewis* and the alleged wrist bending here is as profound as it is office.  And, even if *Lewis* provided controlling law for our court, that case cautions against holding that twisting an arrestee's arm constitutes a deprivation of due process. *Lewis* explains that in "a situation . . . which called for quick action on the part of the police officers, [the court] would be reluctant to find that [pulling hair, twisting an arm, and applying a choke hold] in apprehending an individual, even if the actions as found by the district court were unnecessary and oppressive, constitutes a deprivation of due process."  *Id.* at 714–15.  The court stressed that "after having subdued and handcuffed" plaintiff, the police officer also struck plaintiff "about the face with his nightstick" and held that "[t]his conduct *in conjunction with* the unnecessary and excessive pulling of [plaintiff's] hair and twisting of his arm rises to the level of a constitutional tort."  *Id.* at 715 (emphasis added).  On its own, *Lewis* does not establish a right not to have your handcuffed wrist bent while laying on the ground (and refusing to comply with instructions or stand up) was clearly established when Mr. Clay had his encounter with defendant.

Next, Mr. Clay asks the court to consider *United States v. Cobb*, 905 F.2d 784 (4th Cir. 1990) for the rule that verbal provocation does not excuse a physical assault by a law

enforcement officer.  Doc. 49 at 6.  Very well—but that does not assist the court's analysis of the "clearly established right" prong based on this case's undisputed facts.

Mr. Clay also cites *Jones v. Huff*, 789 F. Supp. 526 (N.D.N.Y. 1992) for its purported holding that slapping and punching a handcuffed inmate violated the Eighth Amendment.  Doc. 49 at 6.  Jones held that an officer "flagrantly violated plaintiff's Eighth Amendment rights when he slapped and punched plaintiff as plaintiff stood handcuffed and naked" when "it was clear that the plaintiff was no longer misbehaving."  *Jones*, 789 F. Supp. at 536.  But Mr. Clay does not allege that defendant slapped or punched him.  The facts of *Jones* are too distant from Mr. Clay's allegations to help here.

Mr. Clay next invokes *Caudle-El v. Peters*, 727 F. Supp. 1175, 1177 (N.D. Ill. 1989) for its purported holding that plaintiff stated an Eighth Amendment claim where he alleged that he was choked, thrown on the ground, and kneed in the back after he was handcuffed and secured.  Mr. Clay asserts that though *Caudle-El* is not controlling law, it is "highly persuasive in the fact of being thrown to the ground in restraints and then suffering further injuries."  Doc. 49 at 6.  In *Caudle-El*, the inmate plaintiff already was handcuffed and secured when a corrections officer "maliciously attacked" plaintiff, "threw him to the ground and dropped his knee into" plaintiff's back, and then told plaintiff that "he would have him killed."  *Caudle-El*, 727 F. Supp. at 1177–78 (internal quotation marks omitted).  *Caudle-El* held that plaintiff's allegations that the officers "physically injured him without justification while he was handcuffed and secured state a viable claim which, if proved, would entitle him to relief under section 1983."  *Id.* at 1180.

But the video footage of the encounter here shows that no officer threw Mr. Clay to the ground or attacked him or kneed him in the back.  Instead, the uncontroverted facts establish that defendant was barely moving when Mr. Clay fell to the ground, causing defendant to react to Mr.

Clay's movement.  Defendant allegedly bent Mr. Clay's wrist while has was laying on the
ground refusing to stand up or comply with orders, forcing officers to carry him.  Mr. Clay
doesn't allege anyone made a death threat.  These factual differences between *Caudle-El* and Mr.
Clay's incident mean that *Caudle-El* doesn't apply here.

Mr. Clay also filed something that the court construes as a Notice of Supplemental
Authority (Doc. 55).  He directs the court's attention to *Jackson v. Austin*, a case this court
decided in 2003.  Doc. 55 at 1 (citing 241 F. Supp. 2d 1313, 1318 (D. Kan. 2003)).  In *Jackson*,
plaintiff contended that defendant "used excessive force in violation of his right to freedom from
cruel and unusual punishment" by "tackling, cuffing and dragging" plaintiff by his arms about 50
yards.  241 F. Supp. 2d at 1317–18.  Our court rejected defendants' qualified immunity assertion
and held that (1) the conduct violated the plaintiff's Eighth Amendment rights and (2) "the law
was clearly established that an officer could not attack a prisoner simply because he or she
attempted to show a written medical excuse in an effort to explain non-compliance with the
officer's order[.]"  *Id.* at 1321.  Again, Mr. Clay's problem is the unchallenged video footage of
his interaction with defendant.  It shows that no one attacked Mr. Clay in a manner anything like
the facts of *Jackson*.  Defendant did not tackle Mr. Clay or drag him by his arms.  Instead, Mr.
Clay fell to the ground and then—after he refused to stand and refused to walk once lifted off the
ground—multiple officers *carried* him away.  Doc. 37 (Videos Two and Three at 1:02:09; Video
Four at 1:01:39; Video Five at 1:02:03; Video Six at 1:02:12; Video Seven at 1:02:42).

Plaintiff does cite a Tenth Circuit case.  *See* Doc. 55 at 2 (citing *Mitchell v. Maynard*, 80
F.3d 1433, 1440 (10th Cir. 1996)).  In *Mitchell,* the facts showed that after plaintiff—"who was
naked and shackled at the wrists, ankles and belly"—"tripped and fell to the ground, he was
beaten by several guards with night sticks while they shouted racial epithets at him" despite "no

indication [plaintiff] had acted inappropriately or posed any type of a disciplinary problem or threat[.]" *Mitchell*, 80 F.3d at 1440–41. Our Circuit held that a "reasonable jury could conclude that the guards' behavior falls into the category of malicious and sadistic rather than a good faith effort to maintain or restore discipline" and that this "conclusion is supported by [plaintiff's] vulnerability at the time of the attack, the lack of provocation on his part and the guards' use of racial epithets during the beating." *Id.* at 1441. Yet again, plaintiff cites a case involving facts unlike those he alleges in his own case. Far afield from *Mitchell,* Mr. Clay doesn't allege that he was naked, thrice shackled, and posing no disciplinary problem. Nor does Mr. Clay allege that the guards beat him with night sticks or shouted racial epithets at him. Given this factual chasm, *Mitchell* does not show that the right that Mr. Clay alleges defendant violated was clearly established for purposes of the qualified immunity analysis.

In short, none of the cases that Mr. Clay cites clearly establish that an officer violates the Eighth Amendment by lifting, carrying, and bending the wrist of a non-compliant, handcuffed inmate who refuses to get up off the ground or walk unless permitted to proceed to a location of his own choosing. These cases Mr. Clay cites simply aren't "close enough on point to make the unlawfulness of the officers' actions apparent." *Mascorro v. Billings*, 656 F.3d 1198, 1208 (10th Cir. 2011).

Mr. Clay has not discharged his responsibility to come forward with "clearly established weight of authority from other courts" that have "found the law to be as the plaintiff maintains." *Reavis*, 967 F.3d at 992. In our Circuit, once an individual defendant asserts a qualified immunity defense, the plaintiff bears the burden of showing: "(1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Margheim v. Buljko*, 855 F.3d

1077, 1087 (10th Cir. 2017) (citations and internal quotation marks omitted).  Mr. Clay has

failed to shoulder that burden because he hasn't identified any Supreme Court or Tenth Circuit

(or any other) precedent clearly establishing that defendant violated Mr. Clay's Eighth

Amendment constitutional rights because he bent the wrist and participated in the lifting and

carrying of a non-compliant handcuffed inmate who refused to stand or walk unless permitted to

direct the group to a location of his own choosing.

And the court hasn't identified one case that could have placed defendant on notice in

October 2019 of an inmate's clearly established right to be free from being bent, bumped, or

redirected while being lifted, carried, and secured back to his cell while refusing to comply with

instructions, refusing to stand, and refusing to walk where directed.  To the contrary, the court

identified one case where our court held that an inmate-plaintiff failed to show that corrections

officers at a Kansas state corrections institution had used excessive force violating plaintiff's

Eighth Amendment rights by bending plaintiff's "head downward to force him to walk forward"

after plaintiff resisted being handcuffed and refused to "walk as directed" where defendants'

"use of force was objectively reasonable to overcome [p]laintiff's resistance to being . . . walked

out of the" area and "medical records reflect no injury . . . ."  *Scott v. Clune*, No. 17-CV-3024-

JAR, 2018 WL 3222612, at *4–5 (D. Kan. July 2, 2018) (granting defendants' Motion for

Summary Judgment on qualified immunity grounds).

At least one of the two prongs of the qualified immunity analysis recognized in *Pearson*

dictates that defendant is entitled to qualified immunity from Mr. Clay's claims against him for

the events of October 9, 2019.  That immunity warrants granting defendant's motion for

summary judgment against Mr. Clay's § 1983 claims.  The court thus grants defendant's motion

for summary judgment (Doc. 28).

### III.   Conclusion

For the reasons explained above, the court adopts the Magistrate Judge's Report and Recommendation (Doc. 52) and denies plaintiff's Second "Motion of Additions/Amended Complaint" (Doc. 45), grants plaintiff's Motion to Add to Memorandum to Opposition of Summary Judg[ ]ment/Dismiss (Doc. 54), construes plaintiff's "Motion to add to Plaintiff's Opposition to Summary Judg[ ]ment" (Doc. 55) as a Notice of Supplemental Authority, and grants defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment" (Doc. 28).

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Report and Recommendation issued by United States Magistrate Judge Angel D. Mitchell on July 31, 2020 (Doc. 52) is accepted, adopted, and affirmed.

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiff Criss M. Clay's second "Motion of Additions/Amended Complaint" (Doc. 45) is denied.

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiff's "Motion to Add to Memorandum to Opposition of Summary Judg[ ]ment/Dismiss" (Doc. 54) is granted.

**IT IS FURTHER ORDERED BY THE COURT THAT** the Clerk is directed to docket plaintiff's "Motion to add to Plaintiff's Opposition to Summary Judg[ ]ment" (Doc. 55) as a Notice of Supplemental Authority.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. 28) is granted.

**IT IS SO ORDERED.**

**Dated this 25th day of March, 2021, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**